THE STATE OF OHIO, APPELLEE, *v.* HILL, APPELLANT.

(No. WD-86-33—Decided
June 5, 1987.)

*Betty D. Montgomery,* prosecuting attorney, for appellee.

*Charles M. Boss* and *Allen N. Kepke,* for appellant Troy Hill, a.k.a. Steve Hill.

RESNICK, J. This cause is before the court on appeal from the April 18, 1986 judgment of the Wood County Court of Common Pleas. Defendant-appellant, Troy Hill (hereinafter "appellant"), was indicted by the Wood County Grand Jury on November 8, 1985, on one count of kidnapping, three counts of rape committed as a principal offender, one count of rape as aider and abettor of Lamont Walker, and one count of rape as aider and abettor of Patrick Henry.

The prosecutor filed a motion for joinder and the trial court granted the motion on February 13, 1986. A joint jury trial was held for appellant, and co-defendants Walker and Henry. Appellant was found guilty of all five counts of rape and the count of kidnapping. Judgment was entered accordingly and appellant was sentenced on April 18, 1986. Appellant filed a timely notice of appeal and asserts the following assignments of error:

"[1.] The trial court erred by its sentencing of the defendant.

"[2.] The trial court erred to the prejudice of defendant when it failed to order the prosecuting attorney to comply with Crim. R. 16(B)(1)(a)(i), (ii), and (iii).

"[3.] The trial court erred to the prejudice of defendant when it failed to order the prosecutor to comply with Crim. R. 16(B)(1)(g).

"[4.] The trial court erred to the prejudice of defendant when it compelled defendant to be tried jointly with co-defendants, Walker and Henry.

"[5.] The trial court erred to the prejudice of defendant by failing to suppress identification of defendant by an impermissibly suggestive photo array and in-court identification procedures.

"[6.] The trial court erred to the prejudice of defendant when it admitted uncounseled out of court statements after defendant asked for an attorney.

"[7.] The cumulative effect of the trial court's errors deprived defendant of a fair trial."

\* \* \*

Appellant asserts in his fourth assignment of error that the trial court erred in compelling him to be tried jointly with co-defendants Walker and Henry. The basis for this argument is the contention that the joint trial violated the United States Supreme Court's holding in *Bruton* v. *United*

*States* (1968), 391 U.S. 123. The Supreme Court in *Bruton* held that:

"* * * the admission of a confession of a codefendant who did not take the stand deprived the defendant of his rights under the Sixth Amendment Confrontation Clause, when that confession implicated the defendant. * * *" *Schneble* v. *Florida* (1972), 405 U.S. 427, 429-430.

It appears from a review of the record that statements of co-defendants Henry and Walker may have been admitted in violation of *Bruton, supra.* For example, Henry told FBI Agent James Henderson that he, Hill, Walker and Greg Files attended a party in Bowling Green, on October 25, 1985. Henry stated that they arrived around midnight and left at approximately 3:00 a.m. Henry further told Agent Henderson that he, Walker and appellant were involved in a high speed chase on the way back from Bowling Green. Additionally, Henry stated that he went to Alabama to ask appellant for a statement to clear him of any involvement in the kidnapping and rapes. Walker stated only that he had not been in Bowling Green on October 25, 1985. Some of these statements may be in violation of *Bruton, supra;* however, reversal is not necessarily mandated.

Both the United States and Ohio Supreme Courts have held that *Bruton* violations do not automatically require reversal of a conviction. In *Harrington* v. *California* (1969), 395 U.S. 250, the United States Supreme Court held that even though evidence obtained from co-defendants' confessions was admitted, the evidence from sources other than the confessions was so overwhelming that any violation of *Bruton* was harmless beyond a reasonable doubt. *Id.* at 254. The United States Supreme Court relied on *Harrington* and reached a similar conclusion in *Schneble, supra:*

"The mere finding of a violation of the *Bruton* rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." *Id.* at 430.

In *State* v. *Moritz* (1980), 63 Ohio St. 2d 150, 17 O.O. 3d 92, 407 N.E. 2d 1268, the Ohio Supreme Court quoted this provision from *Schneble* and determined that sufficient independent evidence of guilt existed to render the admission of statements of co-defendants harmless beyond a reasonable doubt. *Id.* at 156, 17 O.O. 3d at 95-96, 407 N.E. 2d at 1272. These cases clearly establish that if evidence of guilt from sources other than statements by Henry or Walker is so overwhelming that appellant's guilt is clear beyond a reasonable doubt, the use of the statements constitutes harmless error. A review of the evidence presented demonstrates that this is in fact the case.

Floyd Boatman testified that he was present during much of the time that the victim was being raped. He testified that appellant was driving, Walker approached the victim and Henry got out of the automobile and placed a sheet over the victim's head as she approached and threw her into the automobile. He also testified that Henry held the victim down while Walker raped her and then Walker held her down while Henry raped her.

The victim identified appellant as the driver of the automobile and also testified that appellant raped her anally three times. The victim's testimony essentially corroborated Boatman's testimony regarding the events prior to Boatman's departure.

Testing was conducted and evidence was presented at trial which demonstrated that appellant's blood type was consistent with the stains found in the automobile and on the victim's clothing.

Henry's girlfriend, Kellie Hutchens, testified that appellant, Henry and Walker were at the Studio One parking lot and stated that they were going to Bowling Green. She further testified that Henry called her to pick them up in the early morning of October 26, 1985.

Numerous witnesses testified that they saw appellant in Bowling Green with Walker and Henry and saw them leave the party in appellant's automobile some time between midnight and 1:00 a.m. These witnesses include Terry Boles, Anthony Crutchfield, Marvin Parker, R. C. Smith, Jr., Greg Files and Kenneth Boatman. The statements of these witnesses as well as the statement of Floyd Boatman place appellant in his automobile on the night of and at the time of the kidnapping and rapes.

Overwhelming evidence was presented at trial tying appellant's automobile to the kidnapping and rapes. This evidence included the description and identification by the victim of unique characteristics of the automobile and objects in the automobile. A key fact is that there was no liner inside the roof of the vehicle in which the victim was raped. There was no roof liner inside appellant's vehicle either.

The victim also identified such unique objects as a cover on the steering wheel and a watch attached to the dashboard of the automobile. An additional identifying factor is that the automobile in which the victim was raped had water problems. Appellant's automobile also had water problems. There were hairs and stains found in appellant's automobile consistent with the victim's hair and blood type. At 4:09 a.m. on October 26, Bowling Green State University police officers stopped the victim. A description of the automobile and the description of the occupants as four black males was immediately dispatched over the police radio. At 4:14 a.m., the report was corrected to state that only three men were in the automobile. A vehicle matching the description which the victim gave was located at 4:16 a.m. It was determined through a registration check that that automobile was owned by appellant.

Based upon the evidence presented at trial it is apparent that the requirements set forth in *Schneble, supra,* and *Moritz, supra,* have been satisfied. The statements by Henry were not direct admissions of appellant's guilt. In fact, the only statement that could have been considered to inculpate appellant was the request by Henry for appellant to provide a statement clearing Henry's name. Walker only stated that he was not in Bowling Green and did not mention appellant. When these facts are balanced against the evidence of guilt presented from other sources, it is apparent that the "* * * evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." *Schneble, supra,* at 430. Therefore, appellant's fourth assignment of error is found not well-taken.

Appellant contends in his fifth assignment of error that the trial court erred in failing to suppress identification of appellant. Appellant argues that both the photo array and in-court identification procedures were impermissibly suggestive. The United States Supreme Court has stated that:

"* * * each case must be considered on its own facts, and that convictions based on eyewitness identifica-

tion at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. * * *" *Simmons* v. *United States* (1968), 390 U.S. 377, 384.

After reviewing the photo array used in this case, we must conclude that it was not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. The photo array contained thirteen photographs. The photographs consisted of all black males of approximately the same age. All but one of the men had similar complexions and the one who was different was not appellant. There is nothing in the record to indicate that the police officers in any way suggested to the witnesses looking at the photo array who should be chosen from the array. The mere fact that appellant's photograph was slightly larger and did not contain the same border as the other pictures is not sufficient to find that the identification procedure was impermissibly suggestive.

The United States and Ohio Supreme Courts have found photo arrays which were significantly more suggestive than the one in this case not to be impermissibly suggestive. In *Simmons, supra,* several group photographs were shown to witnesses in a bank robbery. Two of the suspected robbers appeared in several of the photographs. *Simmons, supra,* at 385. The United States Supreme Court did not find this to be impermissibly suggestive. Utilizing photographs in which the suspects appeared repeatedly is much more suggestive than the photo array in this case.

In *State* v. *Moody* (1978), 55 Ohio St. 2d 64, 9 O.O. 3d 71, 377 N.E. 2d 1008, the witness was told that a suspect had been picked up who resembled the composite picture drawn from her description. Photos of five individuals were utilized. However, four of the photographs showed the individual standing in front of a height chart, with only the suspect fitting the height as described by the witness. Further, the suspect was the only person with a moustache. *Moody, supra,* at 67, 9 O.O. 3d at 72, 377 N.E. 2d at 1010. The Ohio Supreme Court determined that flaws existed, but concluded that they did not *per se* preclude a subsequent in-court identification. The *Moody* court looked to the reliability of the identification. "* * * [R]eliability is the linchpin in determining the admissibility of identification testimony * * *." *Manson* v. *Brathwaite* (1977), 432 U.S. 98, 114.

The United States Supreme Court has set forth five factors that affect the reliability of an identification:

"* * * [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. * * *" *Neil* v. *Biggers* (1972), 409 U.S. 188, 199-200. See, also, *Manson, supra,* at 114-116.

Applying these factors to the facts of the case *sub judice* demonstrates that the identifications by Officer Shumaker and the victim were reliable. Officer Shumaker approached appellant's vehicle and stood beside the driver's door. Officer Shumaker was standing within close proximity of appellant at the time of the confrontation. Also, Officer Shumaker is trained to observe physical characteristics with the intention of identifying the in-

dividual at a later time. Officer Shumaker observed the photo array later that same morning while the details were fresh in his mind and was certain rather than hesitant in his identification of appellant.

Although the victim's eyes were covered during much of the time, her eyes were uncovered on the return trip from Toledo to Bowling Green. She was allowed to sit in the front passenger seat and had the opportunity to view appellant as he was driving the automobile. She paid a great deal of attention to appellant because she knew she would have to identify him. She stated during trial that she stared at the men in the automobile "* * * because I knew as soon as I got home, I was going to call the police." The victim's identification of appellant was not uncertain, but was positive. Further, the victim identified appellant in the photo array the morning following the rapes.

Appellant argues that the discrepancy between the initial description of the rapists and appellant's physical appearance is sufficient to make the victim's identification suspect. The accuracy of a witness' description is only one factor to be balanced in determining the reliability of an identification. When all the factors are balanced, the factors favoring reliability substantially outweigh the effect of any discrepancies in descriptions.

Appellant requested at trial that the defendants be allowed to sit in various locations in the courtroom at the time that in-court identifications were attempted. The trial court refused this request but did allow the defendants to sit in any of the defense counsel positions. Allowing defendants to sit in other locations in a courtroom for identification is discretionary with the trial court. We find no abuse of discretion in this case.

Under the circumstances, it was not feasible for the defendants to effectively mix with the other people in the courtroom. Appellant and his co-defendants were all in custody at the time and for security reasons could not be mixed with other people in the courtroom. Also, if appellant was mixed in with other people in the courtroom, it would have been necessary to place a guard beside him which would have defeated the purpose of placing appellant in a different location in the courtroom.

Based on the foregoing discussion, appellant's fifth assignment of error is found not well-taken.

Appellant contends in his sixth assignment of error that the trial court erred in admitting statements that were taken after appellant asked for an attorney. *Miranda* v. *Arizona* (1966), 384 U.S. 436, 36 O.O. 2d 237, provides that in a custodial interrogation, the detainee must be informed of specific constitutional rights including the right to have an attorney present during any questioning. The rights provided under *Miranda* can be waived if done knowingly and intelligently. *Miranda, supra,* at 475, 36 O.O. 2d at 255. The Supreme Court has determined that:

"* * * Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence. See *Nix* v. *Williams,* 467 U.S. 431, 444, and n. 5, (1984); *United States* v. *Matlock,* 415 U.S. 164, 178, n. 14, (1974) * * *." *Colorado* v. *Connelly* (1986), 479 U.S. ___, 93 L. Ed. 2d 473, 485, reaffirming holding in *Lego* v. *Twomey* (1972), 404 U.S. 477.

The facts as disclosed at the suppression hearing and trial prove by a preponderance of the evidence that appellant made such a waiver.

The testimony showed that ap-

pellant was read an "Advice of Rights" interrogation form prior to being questioned. Appellant indicated that he understood his rights. FBI Agent Freeman testified that he had no indication that appellant had trouble understanding English and that appellant did not appear to be disoriented or under the influence of drugs or alcohol. Agent Freeman further testified that he read appellant's rights to him in a "determined" fashion. Appellant indicated after his rights were read to him for the first time he understood them and wanted to waive them. However, he was unable to sign the Advice of Rights form because he was in an automobile and handcuffed at the time.

Appellant stated that he wanted an attorney, but also stated that he wanted to make a statement. He was told that he would have to waive his rights in order to make a statement. Appellant then indicated that he would make a statement when he got to where he was going. It was explained to him that he was being taken to the Jefferson County Jail in Alabama. No further questions were asked of appellant at that time. Once appellant arrived at the Jefferson County Jail, his rights were read to him again and he signed an Advice of Rights form at that time. Agent Freeman testified that appellant appeared to understand the rights that he was waiving. Appellant then made a statement while at the Jefferson County Jail.

Upon review of the testimony presented, it appears that appellant did, in fact, understand what his rights were and did make a knowing and intelligent waiver of those rights. For this reason, appellant's sixth assignment of error is found not well-taken.

* * *

On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Wood County Court of Common Pleas is affirmed. This cause is remanded to said court for execution of judgment. It is ordered that appellant pay court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., and GLASSER, J., concur.