OPINION AND JUDGMENT ENTRY
Appellant was convicted and sentenced by the Fulton County Court of Common Pleas following a jury's return of a guilty verdict on charges of aggravated robbery and carrying a concealed weapon. Because we conclude that appellant was not deprived of his right to the effective assistance of counsel and the trial court did not err in denying his motion to suppress a video identification, we affirm.
On July 29, 1997, the Fulton County Grand Jury indicted appellant, Randy Torres, on two counts: 1) aggravated robbery, in violation of R.C. 2911.01(A)(1), and 2) carrying a concealed weapon, in violation of R.C. 2923.12(A). Appellant was also indicted on two gun specifications, in violation of R.C. 2941.141
and R.C. 2941.145. The charges stemmed from incidents involving the robbery of a Fayette, Ohio supermarket. Ultimately, appellant entered a plea of not guilty by reason of insanity to the allegations. Pursuant to this plea, appellant was evaluated as to his competency and the insanity issue. Appellant was found competent to stand trial.
Prior to trial, appellant moved to suppress a video identification of him made by a female supermarket cashier shortly after the incident. The trial court denied the motion. Also during pre-trial proceedings, appellant moved to have two appointed attorneys removed. The first attorney was replaced. However, the trial court refused to find that the second attorney was not representing appellant effectively. For a portion of the suppression hearings, appellant acted pro se, with trial counsel serving as an adviser. However, by the time of the trial, appellant had apparently reinstated his second trial counsel who represented him during the remaining proceedings. Appellant was also granted a second court paid psychological evaluation for defense purposes.
At trial, the cashier testified that on July 21, 1997, three Hispanic males (later identified as appellant, Ricardo Lerma, and a fifteen-year-old juvenile) entered the supermarket where she was working and brought several twelve-packs of beer and some cartons of cigarettes to the check-out counter. According to the cashier, when she asked for identification, appellant replied that it was out in the car. When she told him he would need it to purchase the beer, appellant lifted his shirt, revealing a handgun stuck in the waist of his pants. He then demanded the money in the register. After she gave him the money, the three grabbed the items, ran from the store, and fled in a brown car.
Police were then called. The cashier, in her statement to police, described the three men as "Spanish" and driving a brown older car. She said one man was smaller than the other two. She reported that the man with the gun was heavyset and had a goatee. The cashier then went to the police station where she gave a written statement and later viewed appellant and the juvenile on a video monitor. She testified at trial that she recognized appellant immediately. Approximately one week after the robbery, the cashier also positively identified appellant in a six person computer generated photo array.
At trial, the cashier described the gun as having a greenish brown handle; this was the only visible part of the gun. She also testified that the gunman was the only one of the three men with facial hair. Although appellant was clean shaven at trial, the cashier identified him as the man with the goatee who had the handgun in his belt and demanded the money. She also identified the handgun offered into evidence by the state as the one she saw in appellant's belt.
A second store employee, who had been in the back room during the robbery, also testified. She testified that right before the robbery, she saw appellant and two other Hispanic men get out of an older model brown car and enter the store. She also stated that she saw them walking through the store carrying beer in their hands and under their arms. Shortly after that, the first cashier had come to the back room and reported the robbery.
Fayette's chief of police testified that, immediately after the robbery, he had been driving in his unmarked vehicle. He heard the report that the supermarket had just been robbed by three "Spanish" men in a brown older model car. Within minutes, the chief passed a vehicle fitting that description, a brown 1978 Chrysler. A short time later, the chief, several police officers, and several sheriff's deputies pursued the vehicle which failed to pull over, despite police sirens and flashing lights. The pursuit ended when the suspects' car ran off the road. Lerma, the driver, immediately left the vehicle on foot, taking the handgun with him. Police attempted to apprehend him in a field. However, after a two hour confrontation, Lerma shot and killed himself with the gun. Officers testified that this handgun had a greenish brown handle and was the only gun found in relation to the vehicle or its occupants. The gun was identified and admitted into evidence.
The chief and officers also testified that appellant and the juvenile were arrested and taken into custody at the scene. The suspects were then transported to the local police station. One of the officers testified that although appellant "had an attitude" and vomited in the bathroom after the initial interview, he did not appear confused or disoriented. The police also located in the car seven cartons of cigarettes and five twelve-packs of beer, one of which had a wad of cash stuffed into it. Police also found about a dozen checks taken from the supermarket's cash register; these checks were strewn along the route that the suspects had driven.
Officers also testified that, within a few hours after the robbery, the supermarket cashier viewed appellant and the juvenile together on a video monitor at the police station. Officers corroborated the testimony of the cashier who identified both men almost immediately, and further identified appellant, who had a moustache and goatee, as the man with the gun. One officer stated that eleven days after the robbery, the cashier again quickly identified appellant in a photo array.
The juvenile arrested along with appellant also testified at trial. He stated that on the day of the robbery, appellant, Lerma, and he went into the supermarket to buy beer and cigarettes. The juvenile, even though acknowledging that he carried the cigarettes out, maintained that he went to the car before appellant and Lerma committed the robbery. He stated that, at the time of the robbery, appellant had a moustache and Lerma had no facial hair. However, he denied any prior knowledge that the other two men planned to rob the supermarket or that he had ever observed the handgun prior to seeing it at the police station.
In defense, appellant's mother first testified that she did not believe that appellant knew right from wrong because of childhood abuse inflicted on him by his father. Appellant's father, who had been in the Air Force, allegedly beat appellant because of his rebellious nature. Appellant's mother stated that in order to get appellant into school, she had to place him on Ritalin at the age of five. However, because it made him "like a zombie," she stopped the medication. Appellant's mother also recalled that as a child, appellant had once set a small fire in a forest area and seemed to be angry all the time. Appellant had also gone to counseling for two or three months.
Appellant then testified as to his state of mind at the time of the robbery. He stated that although he remembered the time leading up to the incident and the arrest events immediately after, he did not remember the actual incidents in the store. Appellant testified that he had just been released from jail three days before the robbery and had told his family that he intended to stay out of trouble. However, when enticed by his cousin, Lerma, he immediately began drinking alcohol over the two days prior to the robbery. According to appellant, the juvenile had stolen his father's income tax check and used it to buy the handgun. Appellant could not, however, recall anything about the gun or the actual robbery.
Appellant also claimed to hear voices on the day of the robbery, either in his head or coming from the car radio music. The voices allegedly said, "why don't you come along with them." Appellant testified that while growing up he was paranoid that other people were talking about or laughing at him. He insisted that his use of drugs or alcohol did not cause the problems he had encountered. Appellant stated that at the time of the childhood fire incident, he had "blacked out" and could not remember what had happened.
Appellant believed that he had a "chemical imbalance" all during his life. At the time of the robbery, appellant testified that he simply could not control his actions or refrain from getting into trouble. However, appellant stated that since his arrest he was taking Prozac and had been in counseling for approximately ten months. He testified that he now felt "balanced" and realized that he did not "think straight" before taking the medication. Appellant further stated that, with medication and counseling, he felt he could now deal with the issues caused by the childhood abuse and overcome his destructive behavior. Appellant then rested his case.
On rebuttal, the state offered the testimony of Dr. Thomas Sherman, one of the psychiatrists who evaluated appellant. Dr. Sherman testified that he had not found appellant to be suffering from any mental disease or defect at the time of the robbery which would have caused him not to understand the wrongfulness of his acts. He stated that Prozac was used to treat depression but that it was not used in the treatment of psychotic disorders — the kind of mental illness which would qualify for an insanity defense.
The jury found appellant guilty of both counts and the two gun specifications. Appellant was sentenced to concurrent terms of seven years for aggravated robbery and one year for carrying a concealed weapon; he was sentenced to three years as to the second gun specification (R.C. 2941.145), to be served consecutively with the other two sentences.
Appellant now appeals that conviction, setting forth the following two assignments of error:
"FIRST ASSIGNMENT OF ERROR:
 "MR. TORRES WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
"SECOND ASSIGNMENT OF ERROR
 "MR. TORRES WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."
 I.
We will first address appellant's second assignment of error in which he argues that the trial court erred in denying his motion to suppress the video identification of appellant by the cashier because it was unduly suggestive and tainted the subsequent identifications.
The admission or exclusion of evidence is generally left to the discretion of the trial court. State v. Maurer
(1984), 15 Ohio St.3d 239, 265. The Supreme Court of the United States developed a two-part test to determine whether a trial court should suppress a victim's one-on-one show-up for identification of a suspect. Neil v. Biggers(1972), 409 U.S. 188,198-199. Under the first prong of this test, it must be determined whether the procedure employed was impermissibly suggestive. Id. However, under the second prong, even if such procedure is found to be impermissibly suggestive, the out-of-court identification is nevertheless admissible if the identification itself is reliable under the totality of the circumstances. Id.; State v. Garner (1995), 74 Ohio St.3d 49, 61.
The United States Supreme Court established the following five factors concerning the reliability issue:
 "The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. * * * Neil v. Biggers (1972), 409 U.S. 188, 199-200." State v. Hill (1987), 37 Ohio App.3d 10, 14.
Where the one-on-one show-up occurs near the time of the alleged criminal act and the witness had given police an accurate description of appellant, the likelihood of misidentification is greatly reduced. See State v. Madison (1980), 64 Ohio St.2d 322,332. Further, when the identification is based upon observations at the time of the crime, no due process violation occurs. Statev. Davis (1996), 76 Ohio St.3d 107, 112.
In the present case, the cashier identified appellant based upon her own face-to-face encounter of him from across the check-out counter. She had a clear, close-range view of appellant and of the gun handle. The cashier gave a description of the gunman and the other two men to the police shortly after the incident. Within a short time after the robbery, based upon her observations at the crime scene, the cashier immediately identified both appellant and the juvenile. Furthermore, nothing in the record shows an inconsistency between the cashier's initial description and how appellant actually looked when she positively identified him on the monitor. Consequently, we conclude that, under the totality of the circumstances, the clerk's initial identification had sufficient indicia of reliability for admissibility. Therefore, the trial court did not err in denying appellant's motion to suppress the video identification and subsequent identifications. Accordingly, appellant's second assignment of error is not well-taken.
 II.
Appellant, in his first assignment of error, argues that he was denied the effective assistance of counsel because during opening statements, his attorney promised to present psychological testimony concerning appellant's medication and then failed to present such testimony. Appellant claims that it was the initial promise, not the lack of the witness, that constituted his counsel's prejudicial error. Appellant also claims that counsel was ineffective by failing to object to the photo array and subsequent in-court identifications by the store cashier.
In order to prove ineffective assistance of counsel, a defendant must show 1) that defense counsel's representation fell below an objective standard of reasonableness and 2) that counsel's deficient representation was prejudicial to defendant's case. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. See, also, Strickland v. Washington (1984),466 U.S. 668, 694. Counsel's actions which "might be considered sound trial strategy," are presumed effective. Strickland v.Washington, supra, at 687. Likewise, a decision not to call witnesses may result from changed circumstances during trial and does not constitute ineffective assistance of counsel. State v.Thomas (Aug. 18, 1993), Lorain App. No. 92CA005505, unreported.
In this case, appellant's counsel stated in his opening statement that a psychologist would testify "about treatment that [appellant] is receiving for a chemical imbalance that affected [appellant] at the time of the incident." This information was elicited from appellant and his mother during their testimony. While a treating psychologist may have corroborated the taking of the medication, nothing in the record indicates that any psychologist would have testified that appellant suffered from a mental illness which would cause him not to appreciate the wrongfulness of his acts.
On the contrary, the reports of the two experts appointed by the court in this case uniformly show that, while appellant may have suffered from a personality disorder or depression, appellant was not insane according to Ohio law. In fact, counsel may have concluded that the testimony of appellant and his mother alone presented a stronger defense. Based upon our review of the evaluations, counsel may have determined not to risk putting on a psychologist who might be forced to admit that appellant did not suffer from a severe mental condition at the time of the robbery. Therefore, we cannot say that trial counsel's actions fell below an objective standard of reasonableness.
Additionally, appellant's only basis for objecting to the photo array and in-court identifications was based upon the argument that the initial video identification was inadmissible. Since we have determined that the trial court properly admitted the video identification, trial counsel's failure to object to the photo array and in-court identifications may have been mere trial strategy, and does not constitute an action which falls below an objective standard of reasonableness. Therefore, based upon a complete review of the record, we conclude that appellant was not denied the effective assistance of counsel.
Accordingly, appellant's first assignment of error is not well-taken.
The judgment of the Fulton County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Peter M. Handwork, P.J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.