JOURNAL ENTRY and OPINION
Defendant-appellant Terry Tart appeals from his conviction after a bench trial for aggravated robbery with a firearm specification.
Appellant argues the identification procedure used at the scene was unduly suggestive, his trial counsel was ineffective for his failure to challenge the identification procedure, and his conviction was against the manifest weight of the evidence.
After a thorough review of the record, this court finds the victim gave a reliable identification of appellant as the person who robbed him at gunpoint, appellant's trial counsel was an able advocate, and appellant's conviction is supported by the evidence. Therefore, appellant's conviction is affirmed.
Appellant's conviction results from an incident that occurred on the night of November 18, 1998. The testimony of the state's witnesses established the following sequence of events.
The victim, Duron Harris, was at the intersection of East 130th Street and Griffing Avenue conversing with some friends in front of a store at approximately 10:00 p.m. when he noticed a two-door, light-colored Buick Regal automobile drive past his location. Harris's attention was drawn to the vehicle because he realized he had seen the same vehicle pass him a few moments earlier. By the time the realization had come to Harris, however, the vehicle already was proceeding on its way; therefore, Harris could glimpse only two persons inside.
A few moments later, Harris observed the same vehicle again pass by. This time, the vehicle stopped for the intersection's traffic signal, approximately "15 feet away"[1] from him. Harris, at this time, could see three men were inside: the driver, a front-seat passenger, and a rear-seat passenger. As Harris watched, the vehicle's front-seat passenger, later identified as appellant, made "eye contact" with him.
The personal attention directed at Harris by appellant made him uneasy. Harris "just knew something was about to happen," so he began to walk away. However, as he did so, he "heard the car door open." Harris looked back over his shoulder and saw appellant holding a "pump" rifle. Appellant pointed the gun at Harris and ordered Harris to "lay it down," which Harris knew to meant to "lay down on the ground."
Harris halted and obeyed. When Harris had lain down with his back on the sidewalk, appellant was joined by the vehicle's rear-seat passenger. That person, later identified as James King, held a handgun.
Appellant demanded Harris's shoes and a few other items of clothing. After Harris was relieved of these items, King placed his free hand in Harris's pockets. At that time, Harris believed he had approximately $52 in his pocket. King took the money, then he and appellant quickly returned to the Buick.
Harris rose from his position and observed the vehicle his assailants were entering had "turned around" so that the "driver's side was toward [him]" and it faced westbound. It had just begun pulling away when Harris noticed a Cleveland Police Department patrol vehicle approaching the intersection.
Harris, who at this time was coatless, hatless and shoeless, began "jumping up and down" in an agitated manner in an effort to gain the police officers' attention. He was successful. As the patrol vehicle came near, Harris informed the officers he just had been robbed by "the three guys [that] were in the car" toward which he pointed. The suspects' vehicle, at that time, was approximately "two hundred feet away" from the patrol vehicle. The officers "immediately went after the Regal with lights and sirens" activated.
The driver of the Regal responded by fleeing the scene with the officers in pursuit. During the ensuing chase, Officer Walt Sumerauer, who was in the passenger seat of the patrol vehicle, observed a "semi-automatic handgun [was] thrown from the passenger side window" of the Regal. Sumerauer "never lost sight" of the vehicle as he and his partner traveled in pursuit.
Within a short time, the suspects "ended up crashing into a hillside." The passenger side of the Regal "was up against a tree"; therefore, the suspects were forced to attempt to exit on the driver's side. However, since that side of the Regal also had sustained damage, the driver's door was difficult to open. Thus, as the two officers approached the vehicle, they observed all three suspects remained inside. The officers requested the suspects to exit one at a time; appellant, at that time, was seated in the front of the vehicle on the passenger side.
After placing appellant and the two other men under arrest, the officers discovered a nine-millimeter "rifle or handgun" with an "altered" barrel "partially underneath" the driver's seat of the Regal. They also discovered some clothing and a pager inside the vehicle. Of the three suspects, only appellant had more than $50 in cash in his possession.
Sumerauer and his partner had radioed the information they had received from Harris during their pursuit. Bobby Rose, one of the officers who responded to the scene of the crime in response to that information, was signaled by Harris upon his arrival. Rose still was speaking with Harris when he heard over the police radio the suspects had been arrested. Rose therefore requested Harris to accompany him to the location of the arrests.
Rose and Harris arrived at the scene of the Regal's crash within "15, 20 minutes" of the time the officers' pursuit of the vehicle began. Rose requested his colleagues to "bring [the suspects] out and stand them up in front of [his] lights." The suspects were presented to Harris for his identification "one at a time." Harris identified appellant as "the front seat passenger" of the Regal. Harris also identified the clothing, shoes and pager recovered from the Regal as the items that were stolen from him at gunpoint. Subsequent analysis demonstrated the weapon recovered from the Regal was operable.
Appellant thereafter was indicted with two co-defendants on one count of aggravated robbery, R.C. 2911.01.[2] The indictment carried both a three-year and a one-year firearm specification.[3]
Appellant entered a plea of not guilty to the charge and was assigned counsel to represent him.
Appellant's case and the cases of his co-defendants proceeded separately. Following several pretrial hearings held in appellant's case, appellant signed a waiver of his right to a jury trial and elected to have his case tried to the bench. The state presented the testimony of Harris, Sumerauer, Rose and Paul Jones, the detective assigned to investigate the case. The state also introduced into evidence the firearm discovered inside the Regal and photographs of the other items recovered from the Regal.
Appellant testified on his own behalf and also presented the testimony of witness Charles Gatsen.
Appellant stated he had arrived in Cleveland from Birmingham, Alabama, on the morning of the incident. James King had invited him to attend a relative's funeral but never had taken him there. Instead, King had left appellant at a woman's house for the day and had retrieved him at approximately 9:00 p.m. in the evening.
Appellant stated that, at that time, he met King's friend, William Scott, who was driving a Buick Regal, and another man, to whom he was never introduced. Appellant testified that although he was inside the Regal at the time of the robbery, he was in the rear seat of the Regal behind Scott, he had no knowledge the others intended to commit a robbery, he neither exited the Regal nor held the gun used to threaten the victim, and he saw the stranger exit the Regal and flee just after the police began their pursuit.
For his part, Gatsen testified he was a friend of Harris and had been one of the people with whom Harris was conversing just prior to the time of the robbery. Gatsen further stated he ran from the scene at the appearance of the assailants but observed the incident from a safe distance. Gatsen testified he was acquainted with appellant prior to the robbery, had been placed in the same "pod" with appellant at the county jail and, at that time, learned that appellant had been charged in connection with the robbery of Harris. Gatsen stated he "didn't see" appellant either inside or outside of the Regal during the robbery.
Following the conclusion of the testimony and the arguments of counsel, the trial court found appellant guilty of aggravated robbery with a firearm specification. The trial court immediately sentenced appellant to a term of incarceration of three years on the firearm specification, to be served prior to a term of three years for the aggravated robbery conviction.
Appellant has filed a timely appeal of his conviction. He presents three assignments of error for review, which will be addressed in logical order.
Appellant's third assignment of error states:
 THE TRIAL COURT ERRED IN ADMITTING EVIDENCE REGARDING EYEWITNESS IDENTIFICATION WHERE THE IDENTIFICATION PROCEDURE WAS IMPERMISSABLY (SIC) SUGGESTIVE AND UNRELIABLE.
Appellant argues it was improper for the trial court to admit the evidence that Harris identified appellant as one of his assailants at the scene of the suspects' vehicle's collision with a "hillside." Appellant contends the state failed to establish the reliability of this testimony. This court does not agree.
It must first be noted appellant made no objection to the admission of this testimony. Ordinarily, an appellate court need not consider an error that was not called to the trial court's attention at a time when the error could have been avoided. Crim.R. 52(A); State v. Williams (1977), 51 Ohio St.2d 112. In order to consider this assignment of error, this court is required to determine if the admission of the identification evidence constituted plain error.
"Plain error" analysis is limited; it "is to be applied with the utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." State v. Cooperrider (1983), 5 Ohio St.3d 226, 227. See, also, State v. Long (1978), 53 Ohio St.2d 91. Moreover, to constitute plain error, it must be obvious that, "but for the error, the outcome of the trial clearly would have been otherwise." State v. Underwood (1983), 3 Ohio St.3d 12, syllabus.
An examination of the record in this case reveals plain error does not exist. Although appellant asserts the unnecessarily suggestive nature of the "cold stand" conducted in this case was not overcome by the state, the testimony of the witnesses fails to support his assertion.
Regarding pretrial identification procedures, the Ohio Supreme Court has stated as follows:
 When a witness has been confronted with a suspect before trial, due process requires a court to suppress an identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. State v. Waddy (1992), 63 Ohio St.3d 424, 438, 588 N.E.2d 819, 830-831, citing Manson v. Brathwaite (1977), 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140, 155, and Neil v. Biggers (1972), 409 U.S. 188, 196-198, 93 S.Ct. 375, 381-382, 34 L.Ed.2d 401, 410-411. However, no due process violation will be found where an identification confrontation does not stem from an impermissibly suggestive confrontation, but is instead the result of observations at the time of the crime. Coleman v. Alabama (1970), 399 U.S. 1, 5-6, 90 S.Ct. 1999, 2001, 26 L.Ed.2d 387, 394.
State v. Davis (1996), 76 Ohio St.3d 108 at 112. (Emphasis added.)
Harris testified his attention had been drawn to the Regal and that its unusual activities had heightened his awareness. He stated as the vehicle waited for the traffic signal at the intersection, he and appellant, the front-seat passenger, made "eye contact." Harris indicated the Regal was only a short distance from him at the time. Morever, Harris testified the front-seat passenger was the person who had exited the vehicle with the "pump" gun and pointed the weapon at him.
Harris then had "about five minutes" to observe both of his assailants as they relieved him of his belongings. The location of the crime was illuminated by both the streetlights and the lights from the nearby store windows. Finally, both Sumerauer and Rose testified that no more than twenty minutes had elapsed between the time Harris pointed out the Regal as the vehicle containing his assailants and the time of Harris's arrival at the scene of the Regal's collision. Harris's immediate identification of appellant as the gunman was positive, as was his initial identification of appellant at trial.
Under the totality of the circumstances, therefore, the identification evidence was reliable. State v. Waddy (1992),63 Ohio St.3d 424 at 438-440; State v. Davis, supra; State v. Halley (1994), 93 Ohio App.3d 71 at 77; State v. Hill (1987), 37 Ohio App.3d 10
at 14-15.
The record reveals the state demonstrated the reliability of the identification of appellant as one of the persons who robbed Harris at gunpoint. Therefore, since the trial court did not err in admitting this evidence, "plain error" could not exist.
Appellant's third assignment of error, accordingly, is over-ruled.
Appellant's second assignment of error states:
 DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
Appellant argues his trial counsel was ineffective for his failure either to file a motion to suppress the identification evidence obtained at his arrest or to challenge the admission of the identification evidence. Appellant's argument is unpersuasive.
In Ohio, a properly licensed attorney is presumed competent. State v. Smith (1985), 17 Ohio St.3d 98. One claiming ineffective assistance of counsel bears the burden of demonstrating the following: viz., (1) there has been a substantial violation of an essential duty owed to him by counsel, and (2) he has been thereby prejudiced. State v. Lytle (1976), 48 Ohio St.2d 291; State v. Bradley (1989), 42 Ohio St.3d 136, citing Strickland v. Washington (1984), 466 U.S. 668; see, also, State v. Smith, supra. This court will not second-guess what could be considered to be a matter of trial strategy. Id. Moreover, the establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, supra, syllabus 3. The record of this case with regard to trial counsel's actions fails to demonstrate his performance fell below an objective standard of reasonableness.
Initially, this court notes defense counsel is not required to file a motion to suppress in every case. State v. Flors (1987),38 Ohio App.3d 133, headnote 2. In view of this court's analysis of appellant's third assignment of error, it is clear the filing of a motion to suppress evidence gained as a result of appellant's arrest would have been fruitless. State v. Gibson (1980), 69 Ohio App.2d 91. Counsel cannot be deemed ineffective for failing to file a motion to suppress when there is no justification for one; therefore, appellant cannot sustain his burden to prove counsel violated an essential duty to him on this basis. Id.; State v. Flors, supra; State v. Sanders (Dec. 10, 1996), Pickaway App. No. 95CA6, unreported; cf., State v. Garrett (1991), 76 Ohio App.3d 57.
Furthermore, the record demonstrates it was appellant's decision in the face of overwhelming evidence simply to admit his presence in the Regal during both the commission of the robbery of Harris and the subsequent police pursuit; however, appellant's defense strategy was to deny any knowledge of and any participation in the crime. Under these circumstances, a challenge to the admission of the identification evidence at the time of appellant's arrest would have been senseless.
The record reveals trial counsel was fully prepared and was a capable, diligent advocate for his client. Therefore, appellant cannot sustain his burden to prove trial counsel was ineffective. State v. Bradley, supra. Appellant's second assignment of error, accordingly, is also overruled.
Appellant's first and final assignment of error states:
 DEFENDANT'S CONVICTION FOR AGGRAVATED ROBBERY WITH A FIREARM SPECIFICATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THEREBY DENYING DEFENDANT HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATE CONSTITUION (SIC) AND IN VIOLATION OF ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.
Appellant argues the evidence could not sustain his convictions, contending it failed to meet the eight factors set forth in State v. Mattison (1985), 23 Ohio App.3d 10. Initially, it must be noted that the court in Mattison counseled that the eight factors were merely guidelines to be taken into account when weighing evidence. They are not hard and fast rules which must be followed. Id.
As the Ohio Supreme Court indicated in State v. Thompkins (1997), 78 Ohio St.3d 380 at 387, the court set forth the appropriate test to be utilized when addressing the issue of manifest weight of the evidence in State v. Martin (1983),20 Ohio App.3d 172 at 175 as follows:
 There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * See Tibbs v. Florida (1982), 457 U.S. 31, 38, 42.
This court must be mindful that the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. Thus, a reviewing court may not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169; State v. Jenks (1991), 61 Ohio St.3d 259.
In his argument with respect to this assignment of error, appellant first focuses mainly upon minor inconsistencies in Harris's testimony, then on the significant fact that Harris was positive in his identification of appellant as the gunman until the moment at trial when he became aware his friend Gatsen would be testifying as a witness in appellant's defense. A review of Harris's testimony until that point, however, reveals it was both credible and corroborated by the testimony of the police officers.
Harris was unsure of the number of occupants inside the Regal only until the third time he saw it. Within moments, appellant exited the Regal from the front passenger seat with a pump gun and pointed it at Harris. Harris thereafter had ample time and opportunity to view his assailants as they both robbed him at gunpoint.
From the moment when appellant and his companion re-entered the passenger side of the Regal, the vehicle remained in the sight of either Harris or the police officers. Sumerauer observed a handgun was thrown from the passenger side of the vehicle during the pursuit.
When the Regal ultimately crashed, it contained three occupants, a weapon matching Harris's description of the weapon appellant pointed at him, and Harris's belongings. Appellant was seated in the front passenger seat and was the only one of the occupants with more than $50 in his possession.
Following appellant's arrest, and upon Harris's arrival minutes later, as appellant stood in front of the police vehicle lights, Harris positively identified appellant as the person who had been seated in the front passenger seat of the Regal and who had pointed the large weapon at him during the robbery.
The testimony of appellant and Gatsen, on the other hand, was inconsistent in the important details of their relationship to each other. Moreover, as was its prerogative, the trial court indicated it found the testimony of both witnesses to be incredible.
On the basis of the evidence adduced at trial, this court cannot say the trial court clearly lost its way when it found appellant guilty of aggravated robbery with a gun specification. State v. Martin, supra; State v. Martin (Oct. 28, 1999), Cuyahoga App. No. 73456, unreported; State v. Rawls (Apr. 30, 1998), Cuyahoga App. No. 72051, unreported; see, also, State v. Price (1989), 52 Ohio App.3d 49.
Accordingly, appellant's first assignment of error is also overruled.
Appellant's conviction and sentence are affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _______________________ KENNETH A. ROCCO, JUDGE
TIMOTHY E. McMONAGLE, P.J. and LEO M. SPELLACY, J. CONCUR
[1] Quotes indicate testimony given by a witness at appellant's trial.
[2] Appellant's co-defendants on the indictment were James King and William Scott.
[3] The one-year firearm specification was dismissed by the state prior to trial.