[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
Defendant-appellant, Stacey McBride, and his co-defendant, Anthony Watson, were both charged with the aggravated robbery of Darwin Frierson. After a jury trial, McBride was found guilty of aggravated robbery, in violation of R.C. 2911.01(A)(1), and robbery, in violation of R.C. 2911.02(A)(2). McBride was also found guilty of two gun specifications. The trial court sentenced McBride to ten years' incarceration for aggravated robbery, and to three years' incarceration on the second gun specification.[1] Furthermore, after finding McBride to be a repeat violent offender, the trial court imposed an additional five years' incarceration and ordered all the terms to run consecutively.
In his first assignment of error, McBride argues that the trial court erred in denying his motion for relief from prejudicial joinder. The joinder of defendants to avoid multiple trials is favored in the law.[2]
Joinder is the rule rather than the exception, and relief from joinder is within the sound discretion of the trial court.[3] Further, a defendant asserting that joinder is improper must make an affirmative showing that his rights will be prejudiced if a separate trial is not granted.[4]
McBride argues that he was prejudiced by the following statement made in closing argument by his co-defendant's attorney: "Who was with Mr. McBride, I don't know but it was not Mr. Watson." This statement, however, did not necessarily attempt to inculpate McBride. Rather, the statement was consistent with the alibi defenses presented by both defendants. Each defendant maintained that he had nothing to do with the robbery, and each presented an alibi defense that attempted to exculpate himself but not to inculpate his co-defendant.[5] Moreover, the trial court gave the proper instructions relating to multiple defendants and informed the jury that it had to decide separately the guilt or innocence of each of the defendants.[6] Accordingly, we find no abuse of discretion in the trial court's refusal to grant separate trials.[7]
McBride's first assignment of error is overruled.
In his second assignment of error, McBride contends that the trial court erred in allowing a photo array to be introduced into evidence. McBride argues that his photograph stood out from the others in the array, because, in his photo, his head was tilted to the side.
In this case, competent, credible evidence supported the trial court's determination that the photo array was not impermissibly suggestive.[8]
The array included same-sized photographs of six men, all with similar facial features, including the shape of the face, facial hair and haircuts, and all of similar age, weight and height. The mere fact that McBride's head was slightly tilted in one photograph was insufficient to invalidate the identification procedure.[9] Therefore, we overrule the second assignment of error.
In his third assignment of error, McBride contends that the state's use of peremptory challenges to remove two prospective African-American jurors was racially motivated. To establish a prima facie case of racial discrimination in the selection of a jury, the defendant must establish that members of a racially cognizable racial group have been peremptorily challenged and that the facts raise an inference that the prosecutor has used the peremptory challenges to exclude jurors on account of their race.[10] If the defendant makes a prima facie case of discrimination, the state must then provide a race-neutral explanation for its use of the challenges.[11]
In the case at bar, we assume, without deciding, that McBride established a prima facie case of discrimination. The prosecutor, however, explained the use of the peremptory challenge for the first juror by citing the juror's statement that she had a problem with a police officer as well as her poor body language when the prosecutor inquired whether she could be fair and impartial when considering the testimony of numerous police officers. As to the second prospective juror, the prosecutor expressed his concern that, with only a ninth-grade education, the juror might not fully appreciate the testimony of an expert witness, as well as the juror's poor body language and a demeanor indicating that she was bored with, or indifferent to, the proceedings.
Unless a discriminatory intent is inherent in a prosecutor's explanation, the reason offered should be deemed race-neutral.[12] The prosecutor's explanations here were facially valid, race-neutral justifications for the use of the peremptory challenges.[13]
Therefore, we cannot say that the trial court's finding of no discriminatory intent was clearly erroneous, and the third assignment of error is therefore overruled.
In his fourth assignment of error, McBride argues that his conviction for aggravated robbery was based upon insufficient evidence and was against the manifest weight of the evidence.[14] In the review of the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[15] To reverse a trial court's decision on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[16]
R.C. 2911.01(A)(1), which defines aggravated robbery, provides that "[n]o person, in attempting or committing a theft offense * * *, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
In the case at bar, there was no insufficiency in the state's proof. The state produced evidence that two men had approached Frierson, drawn their guns, and taken his wallet, a gold chain, and a leather coat. Frierson later identified McBride and Watson as the men who had robbed him. Moreover, we reject McBride's claim that the conviction was against the weight of the evidence. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.[17]
Our review of the record convinces us that the trier of fact did not lose its way and create a manifest miscarriage of justice. Accordingly, McBride's fourth assignment of error is overruled.
Therefore, the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman, P.J., Winkler and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
[1] For sentencing purposes, the robbery count merged with the aggravated-robbery count, and the first gun specification merged with the second gun specification.
[2] See State v. Thomas (1980), 61 Ohio St.2d 223, 225, 400 N.E.2d 401,404.
[3] See State v. Perod (1968), 15 Ohio App.2d 115, 239 N.E.2d 100;State v. Abbott (1949), 152 Ohio St. 228, 89 N.E.2d 147.
[4] See State v. Roberts (1980), 62 Ohio St.2d 170, 175, 405 N.E.2d 247,251; State v. Scheibel (1990), 55 Ohio St.3d 71, 89, 564 N.E.2d 54,73.
[5] See State v. Daniels (1993), 92 Ohio App.3d 473, 486, 636 N.E.2d 336,344; State v. Rogers (June 19, 1998), Hamilton App. No. C-970190, unreported, discretionary appeal not allowed (1998), 83 Ohio St.3d 1449,700 N.E.2d 332.
[6] See State v. Thompson (1998), 127 Ohio App.3d 511, 524-525;713 N.E.2d 456, 465.
[7] See, e.g., State v. Garrett (May 1, 1998), Hamilton App. No. C-960284, unreported; State v. Badgett (June 26, 1996), Hamilton App. No. C-950332, unreported, discretionary appeal not allowed (1996),77 Ohio St.3d 1474, 673 N.E.2d 138.
[8] See Neil v. Biggers (1972), 409 U.S. 188, 93 S.Ct. 375.
[9] See State v. Bankhead (Feb. 25, 2000), Hamilton App. No. C-990139, unreported; State v. Hill (1987), 37 Ohio App.3d 10, 523 N.E.2d 885.
[10] See Batson v. Kentucky (1980), 476 U.S. 79, 96,106 S.Ct. 1712, 1723.
[11] Id.; State v. Hill (1995), 73 Ohio St.3d 433, 445, 653 N.E.2d 271,282.
[12] See State v. Diaz (Dec. 8, 2000), Hamilton App. No. C-980186, unreported, discretionary appeal not allowed (2001), 91 Ohio St.3d 1482,744 N.E.2d 1995, citing Purkett v. Elem (1995), 514 U.S. 765, 767-768,115 S.Ct. 1769, 1777.
[13] See State v. Hairston (1990), 67 Ohio App.3d 341, 346,586 N.E.2d 1200, 1203 (poor body language and hesitancy in responding to state's questions were permissible race-neutral explanations).
[14] McBride's argument also embraces the charge of robbery, but he was not convicted of that offense.
[15] State v. Waddy (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819,825.
[16] State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541,546.
[17] State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.