OPINION
Defendant, Rolando Carillo, appeals from his conviction and sentence for assault, kidnapping and aggravated murder.
On November 26, 1996, the body of Paris "PJ" Harper was discovered near Front Street and Sherman Avenue in Springfield. Harper had been killed by a gunshot wound to the back of the head.
Rolando Carillo was arrested in Arizona during the summer of 1999 for the murder of P.J. Harper, and was subsequently extradited to Ohio to stand trial for that offense. Carillo, who was a juvenile at the time the offense was committed, was bound over by the Clark County Juvenile Court to the General Division of the Common Pleas Court for prosecution as an adult.
On January 3, 2000, the grand jury indicted Carillo on one count of Assault, R.C. 2903.13(A), one count of Burglary, R.C. 2911.12(A)(3), one count of Kidnapping, R.C. 2905.01(A)(3), and two counts of Aggravated Murder, one in violation of R.C. 2903.01(B) and the other in violation of R.C. 2903.01(A). A firearm specification was attached to all counts except the assault charge. Subsequently, the burglary charge in count two was dismissed and replaced with a charge of Theft, R.C. 2913.02.
A jury trial commenced on March 20, 2000. On March 24, 2000, the jury returned its verdict, finding Carillo guilty of assault, kidnapping, and both counts of aggravated murder, as well as all firearm specifications. The jury found Carillo not guilty on the theft charge. The State elected to have Carillo sentenced on the aggravated murder count charging prior calculation and design, rather than felony murder. The trial court sentenced Carillo to consecutive terms of life imprisonment plus sixteen years.
Carillo has timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S PRETRIAL MOTION TO EXCLUDE REFERENCES TO DRUG GANGS, TRANSACTIONS, AND THREATS FROM TESTIMONY AT TRIAL. THE COURT CONTINUED TO ERR WHEN IT OVERRULED THE DEFENDANT-APPELLANT'S OBJECTIONS AND REQUESTS FOR MISTRIAL OCCASIONED BY THE STATE OFFERING TESTIMONY CONCERNING DRUG GANGS, DRUG TRANSACTIONS AND WITNESS INTIMIDATION.
 Carillo made a liminal motion prior to trial asking the court to prohibit the State from introducing evidence relating to his involvement in the Latin Kings street gang and the gang's drug activity. The State's theory of this case was that Carillo had murdered P.J. Harper to avenge a large drug debt that Harper accrued while selling drugs for the Latin Kings gang. The State argued that evidence pertaining to the Latin Kings street gang, Carillo's and Harper's membership in that gang, the gang's drug activities, and Harper's and Carillo's involvement in that drug activity, was admissible per Evid.R. 404(B) to prove Carillo's motive for murdering Harper. The trial court agreed with the State's position and ruled that the State could introduce that evidence.
Over Carillo's objections, several of the State's witnesses testified about the Latin Kings street gang, the gang's drug related activities,and the involvement of Carillo and Harper in all of that. Several ofthese same witnesses testified that they were afraid to be in courttestifying against a gang member. During the trial, Carillo moved for amistrial based upon this testimony about the Latin Kings street gang, their drug related activities, and Carillo's and Harper's involvement. The trial court overruled the motion for a mistrial.
A trial court has broad discretion to admit or exclude evidence, and its decision will not be reversed on appeal absent a clear showing that the trial court abused its discretion. State v. Slagle (1992),65 Ohio St.3d 597. An abuse of discretion is more than just an error oflaw or an error in judgment. It implies an arbitrary, unreasonable,unconscionable attitude on the part of the trial court. State v. Adams,supra.
 Carillo argues that the testimony about his relationship with the LatinKings street gang and their drug activities was not relevant because it does not make the existence of any fact that is of consequence to the determination of the specific charges against him any more or less probable, and therefore should have been excluded. Evid.R. 401, 402. Carillo further argues that even if this evidence was relevant, because it associates him with a notorious criminal element, it was highly inflammatory and its probative value was substantially outweighed by the danger of unfair prejudice. Evid.R. 403. Finally, Carillo argues that this evidence, which demonstrates crimes and bad acts independent of and unrelated to the specific offenses for which he was on trial, is prohibited by Evid.R. 404(A) because it was offered to show his general criminal propensity.
Generally, the State is not permitted to introduce evidence of matters extrinsic to the operative facts of the offense charged to prove that defendant committed the offense. State v. Hawn (June 30, 2000), Montgomery App. No. 17722, unreported. Specifically, the State is prohibited by Evid.R. 404(A) from offering extrinsic evidence of the defendant's bad character to prove that Defendant engaged in conforming conduct to commit the crime alleged. However, that same evidence may be admissible per Evid.R. 404(B) for other limited collateral purposes specified therein. The rule states:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 Evid.R. 404(A) excludes evidence of a defendant's bad character or propensity to engage in bad conduct when offered by the State in its case-in-chief to prove that defendant committed the crime alleged. The inference which evidence of propensity permits, that the defendant probably committed the crime with which he is charged because he has in the past demonstrated a propensity to commit other bad acts, is too speculative to be fair and reasonable. Hawn, supra. Evid.R. 404(B) creates an exception when such evidence is, nevertheless, also probative of matters identified in the rule. Id. However, the matter concerned must genuinely be in issue in the crime alleged, State v. Smith (1992), 84 Ohio App.3d 647; Hawn, supra, and the "other acts" which the State seeks to introduce must tend to prove that matter. State v. Curry (1975), 43 Ohio St.2d 66; Hawn, supra.
The State's theory of this case was that Carillo, who is a high ranking member of the Latin Kings street gang, murdered P.J. Harper, who was alsoa member of the Latin Kings, to avenge a large drug debt that Harper owedto the gang as a result of selling drugs for the Latin Kings. Theevidence that the State elicited in its case-in-chief concerning theLatin Kings street gang, their drug activities, and the involvement of P.J. Harper and Rolando Carillo in all of that was extrinsic to the specific elements of the particular crimes with which Carillo was charged.
Carillo argues that this extrinsic evidence was offered by the State solely to demonstrate his propensity for committing crimes and other bad acts, and that this inflammatory, highly prejudicial evidence of bad character was offered to prove that Carillo probably killed P.J. Harper because he acted in conformity with his bad character. Such use of this extrinsic evidence is prohibited by Evid.R. 404(A), and is violative of Carillo's rights to due process and a fair trial. State v. Jamison(1990), 49 Ohio St.3d 182; Hawn, supra.
The State argues, however, and we agree, that the evidence concerning the Latin Kings street gang, their drug activities, and the associationof P.J. Harper and Rolando Carillo with the Latin Kings , was admissibleto prove Carillo's motive for murdering Harper. Motive is defined as:
 Cause or reason that moves the will and induces action. An inducement, or that which leads or tempts the mind to indulge a criminal act. People v. Lewis, 275 N.Y. 33, 9 N.E.2d 765, 768.
Blacks Law Dictionary (5th Edition, 1979) at 914.
The thing which incited, stimulated, or induced Carillo to murder P.J. Harper, his motive according to the State's theory, was the drug debtHarper owed to the gang and its various members. The evidence presentedby the State's witnesses regarding the drug related activities of thegang's members was relevant to show how and why that drug debt arose.Such evidence was admissible to prove Carillo's motive for murderingHarper. See State v. Hill (1987), 37 Ohio App.3d 72; State v. Bobo(1989), 65 Ohio App.3d 685. The evidence at issue here was probative ofthose matters, and that probative value was not substantially outweighedby the danger of unfair prejudice. Bobo, supra. The trial court did notabuse its discretion, as that term is defined by law, in admittingevidence of Carillo's association with the Latin Kings street gang andtheir drug related activities.
Carillo further complains that the testimony of some of the State's witnesses that they were afraid to testify in court in this case created unfairly prejudicial implications of witness intimidation which, although never directly connected to Carillo, nevertheless portrayed him as dangerous. If offered for that purpose, the evidence would be improper and inadmissible. Specific evidence of witness intimidation on a defendant's part is admissible to show consciousness of guilt. State v.Ritchey (1992), 64 Ohio St.3d 353. But, the intimidations must be shownby evidence of the defendant's specific acts to that end. State v.McWhite (1991), 73 Ohio App.3d 323. No evidence of Carillo's specific acts of intimidation were offered to prove why these witnesses were fearful of testifying.
A review of the record demonstrates that the State offered this testimony to explain why some of its witnesses had initially lied to police when questioned about Harper's murder. In offering this evidence, the State was attempting to bolster the credibility of those witnesses whose credibility would otherwise be suspect because they had previously lied. That is a legitimate and proper purpose for eliciting evidence of this kind, and we see no abuse of discretion on the part of the trial court in admitting it.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S OBJECTION TO THE STATE'S FAILURE TO DISCLOSE EVIDENCE OF A WRITTEN CONFESSION OF A THIRD PARTY AS REQUIRED BY THE RULE SET OUT IN BRADY V. MARYLAND 373 U.S. 83, S.CT.1194, 10 L.Ed.2d 215(1963).
 Carillo argues that his constitutional rights to due process and a fair trial were violated because the State failed to disclose evidence favorable to him that was material to his guilt or innocence. Carillo asserts that had this evidence been timely disclosed to him, he could have planned on using it as a central part of his defense.
The State has an affirmative, continuing duty to disclose evidence that is both favorable to an accused and material to either guilt or punishment. Brady v. Maryland (1963), 373 U.S. 83. Evidence is materialif there is a reasonable probability that had the evidence been disclosedto the defense, the result of the proceeding would have been different.United States v. Bagley (1985), 473 U.S. 667; Strickler v. Greene
(1999), 119 S.Ct. 1936.
The only witness whose testimony connected Carillo to Harper's murder was Jason Rosales, also a member of the Latin Kings. Rosales testified that Carillo had a gun and was with Harper when Rosales heard a shot ring out. Rosales also testified that Rosales and Harper had shortly before argued about money that Harper owed the Latin Kings.
Rosales also testified that after the murder of P.J. Harper he went to Mexico. While in Mexico, Rosales was visited there by Carillo, who asked Rosales to take the blame for Harper's murder because Rosales' plan was to remain in Mexico and not return to the United States. Rosales testified that Carillo asked him to prepare a written confession that he committed the crime. Rosales complied with Carillo's request and wrote out a confession. Later, however, Rosales changed his mind and decided that he did not want to take the blame for Harper's murder.
Following this testimony, Carillo objected that the State's failure to disclose the fact that Rosales had previously confessed to P.J. Harper's murder violated the Brady requirement. Carillo argued that a statement by Rosales that he shot Harper was inherently exculpatory and favorable to him, and obviously material to Carillo's guilt or innocence.
The State admitted that it had acquired this evidence one week before trial, but argued that it was not required to disclose it to the defense under Brady because Carillo's actions in asking Rosales to take the blamefor this crime was not exculpatory but incriminating in nature. Thetrial court overruled Carillo's objection, concluding that no violationof the Brady rule had occurred because the evidence was not exculpatoryand defense counsel had access to this information vis-a-vis their ownclient.
If the testimony by Rosales is accepted as true, that his written confession was the product of Carillo's request that he take the blame for Harper's murder, then viewed in that context Rosales' confession was not exculpatory and did not exonerate Carillo. However, that assumes Rosales' credibility, at least with respect to his claim that Carillo had pressured him to follow that course. The fact that Rosales prepared and signed a written confession was on its face clearly favorable to Carillo, and the prosecutor was not at liberty to withhold that evidence from the defense because, in his opinion, there was an explanation thatwould make Rosales' confession not favorable to Carillo.
The State was obligated to disclose to the defense that Rosales' stated that he had once executed a written confession as soon as that evidence became known to the State. However, before the failure to disclose evidence can constitute a Brady violation, that evidence must not only befavorable to the accused and willfully suppressed by the State, but thefailure to timely disclose the evidence must result in prejudice to theaccused. Strickler v. Greene, supra.
On this record, we cannot find that a reasonable probability exits that had Rosales' written confession been disclosed to the defense before trial the result of the trial would have been different. Id. No doubt,prior knowledge of this evidence would have benefitted Carillo'sdefense. Had he known of it, Carillo might have been able to exploit itmore effectively. However, the evidence was ultimately presented attrial and Carillo was able to fully cross-examine Rosales about theconfession he said that he wrote out at Carillo's request. The juryfound Carillo guilty. On these facts and circumstances, Carillo has notdemonstrated that the State's failure to disclose this evidence beforetrial prejudiced him, at least on the standard for prejudice thatStrickler imposes. Thus, the requirements for a Brady violation have notbeen satisfied. The second assignment of error is overruled. Thejudgment of the trial court will be affirmed.
WOLFF, J. and FAIN, J., concur.