OPINION
Defendant-appellant, Jeffrey L. Adams, appeals from a judgment of the Franklin County Court of Common Pleas overruling his motion to suppress and finding him guilty of one count of possession of cocaine in violation of R.C. 2925.11, a felony of the fifth degree. Because the trial court properly overruled defendant's motion to suppress, we affirm.
By indictment filed on August 10, 1999, defendant was charged with one count of possession of cocaine. He responded on November 2, 1999, with a motion to suppress, and a hearing was held before the trial court on April 20, 2000.
According to the state's evidence, a confidential informant informed a Whitehall police officer that several individuals had stolen four motorcycles from a Fairfield County dealer and a Quad-Runner all-terrain vehicle from a city of Whitehall dealer. After interviewing the confidential informant and finding him believable, Officer Wardlow of the Whitehall Police Department met with the Fairfield County deputies. They had the confidential informant drive Wardlow past the residences of the people involved in the thefts; the informant also pointed out some juveniles who were riding the Quad-Runner that had been stolen from the Whitehall business.
In order to gain further information, the law enforcement officers placed a microphone on the confidential informant and listened to a conversation between the informant and one of the individuals who was part of the group with the Quad-Runner. During the conversation, the individual admitted to having the stolen motorcycles as well. He stated, however, that the motorcycles and the Quad-Runner were changing hands so much he was unable to pinpoint their present location among four possible residences.
Because the four residences at issue were located in the city of Columbus, Wardlow sought a search warrant from the Franklin County Municipal Court, which issued the search warrant to the Chief of Police of the city of Columbus premised on the sworn statement of Officer Wardlow. The search warrant permitted examination of 764 Lawndale Avenue to determine whether stolen motorcycles, all-terrain vehicles, and a license plate were being kept at that location. Similar warrants were issued for the other three residences.
Having been issued the search warrants, Wardlow contacted the city of Columbus Swat Team for assistance in executing the warrant. Because it had no available personnel to offer Wardlow, it declined assistance. Wardlow then spoke with the radio bureau of the Columbus Police Department, which offered a cruiser with one officer to "be in the area for us if we had trouble at a location." (Tr. 23.)
Wardlow, along with some Fairfield County deputies, approached the residence at 764 Lawndale Avenue. Wardlow was the first man out, and was assigned to protect the back of the house. As he approached the house, he saw a man coming off the front steps by the door. The man had his hands in his pockets. Wardlow displayed his badge, announced he was a police officer, and ordered the man to remove his hands from his pockets. The man, later identified as defendant, failed to do so. When defendant continued to move toward a vehicle parked in the driveway, his hands still in his pockets, Wardlow again identified himself as a police officer, told defendant he had a search warrant, and ordered him to remove his hands from his pockets. Defendant continued to move to his vehicle and refused to remove his hands from his pockets. Defendant went around the front of the car and was coming up the back side of it when Wardlow noticed that Patrolman Snider and two of the deputies were closing in on defendant. Wardlow continued to the back of the house.
According to Snider, they had had that area of Columbus under surveillance by several officers, including Whitehall and Fairfield County deputies, for the recovery of stolen motorcycles and an all-terrain vehicle. On the day the warrant was executed, Snider had been watching the house at 764 Lawndale and also the field where some of the suspects had been riding the stolen property. On arriving at 764 Lawndale, they saw Wardlow, but did not have the opportunity to hear his remarks. They also observed defendant.
Snider intended to stop defendant, check him for weapons and thus ensure officer safety. As he approached defendant, Snider asked defendant to stand still, but defendant started moving toward the driver's seat of his automobile. Snider again asked him to stop, but defendant continued to move. As defendant started to enter the vehicle, Snider pulled him from the interior of the automobile. Defendant then reached toward the waistband with his left hand, causing Snider to become concerned about safety. Snider tried to pull defendant's hand away, but defendant's struggling became more and more obvious. Snider pulled defendant toward the trunk of the automobile where Fairfield County deputies assisted in getting defendant under control. When they pulled defendant away from the car, they observed several small packets. The packets were clear, contained white powder, and were lying at defendant's feet. Because the packets were not there when Snider first approached defendant, Snider knew defendant had dropped the packets. Snider also saw some crumpled money. The recovered packets led to defendant's indictment for possession of cocaine.
Based on the evidence presented, the trial court overruled the motion because it found no basis to suppress, either in the warrantless search of defendant or in the execution of the search warrant by Whitehall officers and Fairfield County deputies in the city of Columbus. On May 22, 2000, defendant entered a no contest plea to the indicted offense and was sentenced on July 18, 2000. Defendant appeals, assigning two errors:
 I. THE TRIAL COURT ERRED WHEN IT FOUND THAT A POLICE OFFICER WAS JUSTIFIED IN DETAINING THE DEFENDANT AT THE SCENE. SAID ERROR DEPRIVED APPELLANT OF HIS RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES AS GUARANTEED BY ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION AND THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 II. THE TRIAL COURT ERRED WHEN IT REFUSED TO APPLY THE EXCLUSIONARY RULE TO EVIDENCE THAT IS THE PRODUCT OF POLICE MISCONDUCT. SAID ERROR INVOLVED THE EXECUTION OF A SEARCH WARRANT OUTSIDE OF THE JURISDICTION OF THE LAW ENFORCEMENT AGENCY THAT PROCURED THE WARRANT.
Defendant's first assignment of error contends the trial court erred in overruling his motion to suppress his warrantless detention at the residence subject of the search warrant.
"A search warrant carries with it the limited authority to detain occupants of the premises while a proper search is executed, establishing probable cause to arrest." State v. Bobo (1989), 65 Ohio App.3d 685, 689, citing Michigan v. Summers (1981), 452 U.S. 692. "The term `occupant' refers not only to the owner of the premises, but may also include other individuals who may be deemed to have such a relationship to the premises to be searched that police may make a reasonable connection between the person and his property within the residence." State v. Hawkins (July 22, 1996), Richland App. No. 95 CA 55, unreported, citing State v. Schultz (1985), 23 Ohio App.3d 130, 133.
As the Supreme Court explained in Summers, of prime importance in determining the constitutionality of detaining an individual is the warrant to search the house for contraband: "In assessing the justification for the detention of an occupant of premises being searched for contraband pursuant to a valid warrant, both the law enforcement interest and the nature of the `articulable facts' supporting the detention are relevant. Most obvious is the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found. Less obvious, but sometimes of greater importance, is the interest in minimizing the risk of harm to the officers. * * * The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." Summers, supra, at 702-703.
Many courts have applied the rationale of Summers to cases involving detention of a person found in the home to be searched. See State v. Taylor (1992), 82 Ohio App.3d 434; Hawkins, supra. In Summers, however, the officers executing the search warrant for the house encountered the defendant there descending the front steps, and detained him while they executed the search warrant. Similarly, here, the officers saw defendant descending from the front of the house, and had no way to know whether defendant had been in the house, could have evidence significant to the search warrant, or might be an occupant of the premises. Moreover, defendant had his hands in his pockets and refused to remove them from his pockets, creating a safety issue. Given the principles underlying the decision in Summers, the officers could constitutionally detain defendant to ensure safety and prevent destruction of evidence. As the Supreme Court noted in Summers, "the detention represents only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant. The existence of the search warrant, however, also provides an objective justification for the detention. A judicial officer has determined that police have probable cause to believe that someone in the home is committing a crime. Thus a neutral magistrate rather than an officer in the field has made the critical determination that the police should be given a special authorization to thrust themselves into the privacy of a home. The connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies the detention of that occupant." Summers, supra, at 703-704.
As a result, although the officers were not absolutely certain defendant was armed, they could initiate a search when suspicions were reasonably aroused. State v. Riddle (June 19, 1995), Clinton App. No. CA94-12-032, unreported (officers executing search of residence could constitutionally stop and conduct a protective search of a person who approached via driveway of the residence). For the foregoing reasons, defendant's first assignment of error is overruled.
Defendant's second assignment of error contends the trial court erred in overruling his motion to suppress because the search warrant, issued by the Franklin County Municipal Court to the Chief of Police for the city of Columbus, was executed by officers acting outside their territorial jurisdiction.
In State v. Klemm (1987), 41 Ohio App.3d 382, a Cincinnati police officer submitted an affidavit for a search warrant to a judge of the Hamilton County Municipal Court. The court found probable cause for a search and issued a warrant to the sheriff of Hamilton County. The address to be searched was in Hamilton County, but outside the city of Cincinnati. The Cincinnati police officer who submitted the affidavit for the search warrant conducted the search, and no member of the county sheriff's department took part in the search. Defendants moved to suppress the evidence, and the trial court granted the motion.
In reversing, the court acknowledged the warrant had been issued to a county sheriff but was executed by a city policeman outside the city limits and outside the policeman's jurisdiction. Nonetheless, the court noted that for a violation of law to require the suppression of improperly seized evidence under the exclusionary rule of Mapp v. Ohio (1961), 367 U.S. 643, the violation must involve a deprivation of a constitutional right. Because defendants in Klemm raised no question regarding the probable cause determination of the municipal court judge issuing the warrant, the search warrant, supported by probable cause, passed "constitutional muster." Klemm, supra, at 383. Thus, the court found that the violation of law in executing the valid warrant to search the premises did not require suppression of evidence.
Similarly, although the search warrant here was directed to the Chief of Police of the city of Columbus, and the house to be searched was located within the city limits, the Whitehall officers' execution of the warrant in conjunction with the Fairfield County deputies did not rise to the level of a constitutional violation; defendant does not challenge the probable cause basis for issuing the warrant. Klemm, supra; State v. Leadingham (Feb. 6, 1990), Scioto App. No. CA-1753, unreported (holding that "where probable cause exists to issue a search warrant, the search will be deemed constitutional even though the warrant was executed by police officers outside of their jurisdictional limits"). Because any violation of law does not rise to the level of constitutional error, defendant's second assignment of error is overruled.
Having overruled both of defendant's assigned errors, we affirm the judgment of the trial court.
 _____________ BRYANT, P.J.
DESHLER and BOWMAN, JJ., concur.