[Cite as *State v. Miller*, 2016-Ohio-5911.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. Sheila G. Farmer, P. J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 16 CA 13 |
| JOHN K. MILLER | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:   Criminal Appeal from the Court of Common
Pleas, Case No. 15 CR 409R


JUDGMENT:        Reversed and Remanded


DATE OF JUDGMENT ENTRY:   September 21, 2016


APPEARANCES:

For Plaintiff-Appellee       For Defendant-Appellant

BAMBI COUCH PAGE      R. JOSHUA BROWN
PROSECUTING ATTORNEY    32 Lutz Avenue
DANIEL M. ROGERS      Lexington, Ohio 44904
ASSISTANT PROSECUTOR
38 South Park Street
Mansfield, Ohio 44902

*Wise, J.*

**{¶1}**   Appellant John K. Miller appeals his conviction on five first-degree misdemeanor counts of endangering children and one second–degree felony count of endangering children entered in the Richland County Court of Common Pleas following a plea of no contest.

**{¶2}**   Appellee is State of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

**{¶3}**   On May 12, 2015, the Richland County Grand Jury indicted Appellant John K. Miller on eleven (11) counts as follows:

Counts I through V, endangering children, in violation of R.C. §2919.22(A) and (E)(2)(a), misdemeanors of the first degree.

Count VI, endangering children, in violation of R.C. §2919.22(A)&(E)(2)(c), a felony of the third degree.

Count VII, endangering children, in violation of R.C. §2919.22(B)(I)&(E)(2)(c), a felony of the third degree.

Count VIII, endangering children, in violation of R.C. §2919.(B)(I)&(E)(2)(d), a felony of the second degree.

Count IX, endangering children, in violation of R.C. §2919.22(B)(3)&(E)(2)(c), a felony of the third degree.

Count X, endangering children, in violation of R.C. §2919.22(B)(3)&(E)(2)(d), a felony of the second degree.

Count XI, felonious assault, in violation of R.C. §2903.11(A)(1), a felony of the second degree.

**{¶4}** These charges relate to abuse of his nephew and five nieces.

**{¶5}** On May 19, 2015, Appellant entered a plea of not guilty at arraignment.

**{¶6}** On June 25, 2015, Appellant filed a Motion to Suppress any and all statements made by Appellant to law enforcement officials.

**{¶7}** On July 31, 2015, a hearing was held on Appellant's motion to suppress. At the hearing, the State and Appellant's trial counsel agreed that Appellant invoked his right to counsel during his interrogation by MPD Detective Dave Scheurer. However, the State argued that Appellant waived that right by voluntarily speaking with MPD Sergeant Ken Carroll and, thus, Appellant's statements to Sgt. Carroll were admissible.

**{¶8}** The State presented a video recording of Appellant's conversation with Sgt. Carroll.

**{¶9}** The video begins at 5:15 p.m. with Appellant alone in the interview room. At 5:17 Detective Schuerer of the Mansfield Police Department (MPD) enters the room.

**{¶10}** At 5:20 Appellant is read his Miranda rights and signs the Miranda card presented by Detective Schuerer.

**{¶11}** At 5:21 Appellant indicates that he is tired and has only had a couple hours of sleep.

**{¶12}** Detective Schuerer continues to interview Appellant.

**{¶13}** At 5:55 p.m. Appellant states "I think I'm going to need a lawyer is what it's sounding like."

**{¶14}** The interview continues and Appellant again states "sounds like I'm being accused so I don't know what it's going to take to get a lawyer, but I'm going to need a

lawyer." Detective Schuerer responds "so you're telling me at this point you want an attorney."

{¶15} At 5:56 Appellant again states "I need a lawyer, please." Detective Schuerer's responded "you don't have to answer any of my questions, but listen to me talk". Detective Schuerer then makes a statement that Kaylee is not expected to live.

{¶16} At 5:57 Detective Schuerer leaves the room.

{¶17} Appellant remains in the interview room alone.

{¶18} At 6:30 p.m., the door opens and a male voice says "come with me."

{¶19} At 6:33 p.m. Detective Schuerer begins interviewing Ashley Miller, Appellant's spouse.

{¶20} At 9:21 p.m. the interview with Ashley concluded.

{¶21} At 9:36 p.m. Ashley is placed under arrest and taken into custody.

{¶22} At 9:41 Appellant reenters the room.

{¶23} At 9:49 Detective Schuerer comes into the room and tells Appellant "you don't have to talk to me, but you can certainly listen. If you want to talk at any time you can jump in. Ashley told me the whole thing. Everything you told me was a lie. She told me the whole thing was fabricated."

{¶24} At 9:50 Det. Schuerer advises Appellant "you are under arrest and you are going to the county jail." Det. Schuerer poses the question "do you need to jump in and say anything?" Appellant asks "what's it going to do to stay out of jail?" Det. Schuerer tells him to keep himself out of a lot of hot water you can certainly revoke your right to wish to have an attorney. Appellant responds "I still want an attorney so he can advise me what I need to do."

{¶25} At 9:54 p.m. Appellant was placed under arrest by a patrol officer in the interview room. While being handcuffed, Sergeant Ken Carroll can be heard off camera asking him do you want to talk. Carroll asks "do you want to sit down and talk for a minute?" Carroll goes on to say "you have to revoke that right. You have to be the one to tell us you want to talk." Det. Schuerer then says "if you don't want to talk to me and you want to talk to him I will leave the room." Appellant indicates he would like to talk to Det. Carroll for a minute. Det. Carroll enters the room while Appellant is seated in handcuffs and asks him "do you want to waive your right to talk to us. You've got to tell me you want to waive your right to talk. You've already requested an attorney. The only way I can talk to you is if you tell me you want to talk and tell me the truth." Appellant states that he just wants to go home and Det. Carroll advises "you are not going to go home tonight". Appellant puts his head on the table. Det. Carroll then tells him, "you've got to realize this is a small child that's probably going to die".

{¶26} The dialogue continues and at 9:58 Det. Carroll again tells him he needs to waive his rights. Appellant says "I need an attorney". Appellant makes a statement "that I'm getting screwed out of an attorney and I need one". Det. Carroll tells him he is going to get an attorney regardless. Det. Carroll advises the possible charge would be child endangering and at this point you're no more than a witness. Det. Carroll tells him if you want to talk we will take you out of handcuffs and we will talk. Appellant is advised his wife gave a statement, and he requests to hear it. This request was denied. Det. Carroll's conversation with Appellant continues for over ten minutes. Appellant, on at least two occasions, says "I don't know what to do. I'm scared".

**{¶27}** At 10:09 Appellant makes an incriminating statement admitting to abusing his nieces and nephew and to lying about the causes of their injuries.

**{¶28}** Appellant was handcuffed from the time he was arrested at 9:54 until the incriminating statement was made at 10:09.

**{¶29}** At 10:26 the handcuffs were finally removed.

**{¶30}** At 10:33 Appellant was reread his Miranda, signed a written waiver of his Miranda rights and provided a full recorded statement.

**{¶31}** The State also called Sgt. Carrol as a witness. He testified that Appellant told him that he did not like Det. Scheurer. (T. at 9-10). Sgt. Carroll further testified that after Appellant's initial request for a lawyer, he escorted Appellant outside to smoke a cigarette. (T. at 8-9). Sgt. Carroll testified that he and Appellant engaged in small talk, smoked three (3) cigarettes together, and developed a rapport. (T. at 8-10).

**{¶32}** Following the hearing, the trial court ordered the State to file a written brief within two (2) weeks and ordered Appellant to file a reply brief within one (1) week after the filing of the State's brief.

**{¶33}** Subsequently, by Judgment Entry filed September 10, 2015, the trial court overruled Appellant's Motion to Suppress.

**{¶34}** On January 5, 2016, Appellant entered a no contest plea to Counts I through V, endangering children, in violation of R.C. §2919.22(A)&(E)(2)(a), misdemeanors of the first degree and also Count X, endangering children, in violation of R.C. §2919.22(B)(3)&(E)(2)(d), a felony of the second degree.

**{¶35}** By Judgment Entry filed February 18, 2016, the trial court imposed a sentence of six (6) months on Counts I, II, III, IV and V and five (5) years on Count X, to run concurrently, for a total sentence of five (5) years in prison.

**{¶36}** Appellant now appeals, raising the following error for review:

## ASSIGNMENT OF ERROR

**{¶37}** "I. THE TRIAL COURT ERRED BY FAILING TO SUPPRESS APPELLANT'S STATEMENT MADE TO DETECTIVE CARROLL AFTER APPELLANT HAD INVOKED HIS RIGHT TO COUNSEL. APPELLANT DID NOT VALIDLY WAIVE HIS RIGHT TO COUNSEL AFTER DECLARING HE WANTED TO SPEAK TO AN ATTORNEY AND HE DID NOT INITIATE FURTHER CONVERSATION WITH THE POLICE."

## I.

**{¶38}** In his sole Assignment of Error, Appellant argues that the trial court erred in not suppressing the statements he made to Detective Carroll. We agree.

**{¶39}** Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist .1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's

conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

**{¶40}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See*, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See*, *Williams*, *supra*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

**{¶41}** In the case *sub judice*, Appellant claims that all questioning should have stopped when he invoked his right to counsel, and therefore his statements obtained in violation of his Fifth Amendment rights should have been suppressed.

**{¶42}** "The Fifth Amendment to the United States Constitution provides that no person 'shall be compelled in any criminal case to be a witness against himself.' " *State v. Leach*, 102 Ohio St.3d 135, 807 N.E.2d 335, 2004–Ohio–2147, ¶ 11. The Fifth Amendment applies to the states through the Fourteenth Amendment. *State v. Graham*,

136 Ohio St.3d 125, 991 N.E.2d 1116, 2013–Ohio–2114, ¶19. During a custodial interrogation, a suspect has the right to remain silent and to be represented by an attorney. *Miranda v. Arizona*, 384 U.S. 436, 469, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "A suspect's right to an attorney during questioning * * * is derivative of his [or her] right to remain silent * * * [,]" under the Fifth Amendment. *Leach* at ¶13, quoting *Wainwright v. Greenfield*, 474 U.S. 284, 298–299, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) (Rehnquist, J., concurring). When a person is subject to a custodial interrogation, he must be informed of his rights to remain silent and to an attorney. *Miranda* at 469 ¶ 21}. When a suspect in police custody invokes his Fifth Amendment right to counsel, police interviewers must cease the interrogation and may not further initiate the interview until the suspect's lawyer is present. *Edwards v. Arizona*, 451 U.S. 477, 484–485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Any statement, question or remark (other than those normally attendant to arrest and custody) that the police should know are reasonably "likely to elicit an incriminating response" is an interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "The latter portion of this definition [of interrogation] focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Id.*

**{¶43}** We review the totality of the circumstances in determining whether a suspect has voluntarily waived his Miranda rights. *In re Taylor* at 2. "[T]he totality of the circumstances include[s] the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of the interrogation; the existence of physical deprivation or mistreatment; the existence of threat or inducement." *State v. Shepherd*, 9th Dist. Summit No. 15777, 1993 WL 36093, (Feb. 17, 1993), quoting *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, vacated in part

on other grounds 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978).

**{¶44}** "The State bears the burden of proving a waiver of Miranda rights by a preponderance of the evidence." *State v. Barr*, 9th Dist. Summit No. 16822, 1995 WL 244156, (Apr. 26, 1995), citing *State v. Bobo*, 65 Ohio App.3d 685, 689, 585 N.E.2d 429 (8th Dist.1989).

**{¶45}** When a suspect in custody expresses "his desire to deal with the police only through counsel," the suspect "is not subject to further interrogation by the authorities until counsel has been made available to him." *State v. Voss*, 12th Dist. Warren No. CA2006–11–132, 2008–Ohio–3889, ¶ 65, citing *Edwards v. Arizona*, 451 U.S. 477, 485–485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). To invoke the right to have an attorney present during interrogation, a suspect must unambiguously request counsel such that a reasonable officer in the circumstances could understand the statement to be a request for an attorney. *Voss* at ¶ 66, quoting *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). However, if the statement is not clear that the person is requesting an attorney, then the officers are not required to stop questioning the suspect. *Id.* Ohio courts has found the following requests to be equivocal: I think I need a lawyer." *State v. Henness*, 79 Ohio St.3d 53, 63, 679 N.E.2d 686 (1997). "Maybe I want a lawyer, maybe I should talk to a lawyer." *State v. Salinas*, 11th Dist. Lake No. 96–L–146, 124 Ohio App.3d 379, 384, 706 N.E.2d 381 (1997). "I think that I would like an attorney." *State v. Taylor*, 9th Dist. Medina No. 2783–M, 1999 WL 61619 (Feb. 9, 1999). "I think I might need to talk to a lawyer." *State v. Hanson*, 2nd Dist. Montgomery No. 15405, 1996 WL 535297 (Sept. 13, 1996) "Where's my lawyer?" *State v. Williams*, 10th Dist. Franklin No. 03AP–4, 2003–0hio–7160. "Well, can I have a lawyer present?" *State v. Foster*, 11th Dist.

Trumbull No. 2000–T–0333, 2001–0hio–8806. "Well, can I talk to my lawyer then if there is something wrong like that?" *State v. Knight*, 2nd Dist. No. 04–CA–35, 2008–0hio–4926. "[C]an I have an attorney?" *State v. Raber*, 189 Ohio App.3d 396, 2010–0, 938 N.E.2d 106 Ohio 4066,189 Ohio App.3d 396, 938 N.E.2d 1060 (9th Dist.).

**{¶46}** In the case before us, both sides agree that Appellant initially invoked his right to counsel. The issue, therefore, before this Court is whether Appellant subsequently waived that right when he spoke with Detective Carroll.

**{¶47}** Upon review we do not find that Appellant waived his previously invoked right to counsel. Appellant, at 5:55 p.m. stated "I think I'm going to need a lawyer is what it's sounding like" followed by "I need a lawyer, please." at 5:56 p.m. At 9:50 p.m. Appellant stated "I still want an attorney so he can advise me what I need to do." Then at 9:58 p.m. Appellant states "I need an attorney" and "…I'm getting screwed out of an attorney and I need one."

**{¶48}** While Appellant did then go on to speak with Det. Carroll and ultimately incriminate himself, he did so without ever having revoked his previously invoked right to counsel. We do not find that the dialogue with Det. Carroll was initiated by Appellant but was instead initiated by the officers asking him if he wanted to speak with Det. Carroll. Appellant was advised at least five times that he needed to waive his right to counsel in order for the officers to continue speaking with him and at no time did he state that he wanted to revoke his right or wanted to speak with the officers without having an attorney present or consulting with an attorney first.

**{¶49}** Based on the foregoing, we find Appellant's sole Assignment of Error well-taken and hereby sustain same.

{¶50} Accordingly, the judgment of the Richland County Court of Common Pleas is reversed and this matter is remanded for further proceedings consistent with the law and this opinion.

By: Wise, J.

Farmer, P. J., and

Hoffman, J., concur.

JWW/d 0826